IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| **STANLEY MARTIN**<br>3959 Ashmont Drive<br>Erlanger, KY 41018 | : | CASE NO. 2:22-CV-89-DLB-CJS |
| | : | |
| **Plaintiff** | : | **JUDGE DAVID L. BUNNING** |
| v. | : | |
| **ZEGARY ALLEN, MD, et al.** | : | |
| **Defendants** | : | |
| | : | |

**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT & JURY TRIAL DEMAND ENDORSED**

## PARTIES

1. Plaintiff Stanley Martin is a resident, citizen, and domiciliary of Erlanger, Kentucky.

2. Defendant Zegary Allen, M.D. ("Dr. Allen") is a resident, citizen, and domiciliary of Hamilton County, Ohio, with a medical practice in Kenton County, Kentucky.

3. Defendant Summit Medical Group, Inc. d/b/a St Elizabeth Physicians ("SEP") is a Kentucky Corporation with its headquarters and principal place of business, in Boone County, Kentucky.

4. Defendant St. Elizabeth Medical Center, Inc. ("SEH") is a Kentucky Corporation with its headquarters and principal place of business, in Kenton County, Kentucky

## JURISDICTION AND VENUE

5. This action seeks monetary damages in excess the jurisdiction of this Court.

6. This Court has jurisdiction over this class action under 28 U.S.C. § 1332(d)(2)

which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts original jurisdiction over any class action in which any member of a class is a citizen of a different state from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5 million, exclusive of interest and costs.

7. Plaintiff resides within the State of Kentucky and the other members of the class reside within the State of Kentucky or within a state of the United States. Defendants Summit Medical Group and St. Elizabeth Medical Center are citizens of the state of Kentucky and Defendant Zegary Allen resides within the State of Ohio. The amount in controversy, exclusive of interest and costs, exceeds $5 million.

8. Therefore, diversity of citizenship exists under CAFA required by 28 U.S.C. §1332(d)(2).

9. Venue for this action properly lies in the Eastern District of Kentucky, pursuant to U.S.C. § 1391, because Summit Medical Group and St. Elizabeth reside in this judicial district and because the claims the acts and omissions complained of by Plaintiff arose in this judicial district.

## FACTS

### STANLEY MARTIN

10. On 8/8/2018, Mr. Martin had his first office visit and eye exam with Dr. Allen.

11. During the visit, Dr. Allen asked Mr. Martin if he had trouble seeing at night. Mr. Martin stated that he occasionally had slight difficulty seeing from his left eye, but it was not something that bothered him.

12. Dr. Allen proceeded to falsely state that based upon his exam, Mr. Martin had severe cataracts in both eyes and would need surgery.

13. Dr. Allen also stated that his cataracts were worse in his right eye, contradicting what Mr. Martin had stated about his vision.

14. Mr. Martin was confused and did not believe he needed surgery, but he trusted Dr. Allen because he was a doctor.

15. Dr. Allen assured Mr. Martin that after the ataract surgery he would have better and clearer vision.

16. Mr. Martin's Preoperative Visual Acuity test revealed: Right eye – 20/30; Left eye – 20/25.

17. Dr. Allen falsely documented that "Patient states (his vision) it's been steadily decreasing over the past few years," and "Patient states that activities of daily living have reduced significantly enough to warrant surgery."

18. Mr. Martin made no such statements and only agreed to the surgery because Dr. Allen convinced him he needed it.

19. On 8/22/2018, Dr. Allen performed unnecessary cataract surgery on Mr. Martin's right eye and scheduled him an appointment to receive unnecessary cataract surgery in his left eye.

20. After the surgery, Mr. Martin's vision did not improve, but became worse with new visual changes and blurriness. While some visual disturbance is expected after surgery, there is also the expectation for the visual disturbance to clear over time. Mr. Martin's vision never improved but remained just as poorly as it was the first day after surgery.

21. Mr. Martin complained to Dr. Allen that his vision had been worse since the surgery, but Dr. Allen dismissed him and told him that upon his exam, there was absolutely nothing wrong with his right eye.

22. Dr. Allen wanted to proceed with the left eye cataract surgery, but Mr. Martin refused due to the outcome of the first surgery.

23. Dr. Allen told Mr. Martin that he could fix his visual problems in the right eye caused from the cataract surgery by performing another surgery.

24. Mr. Martin reluctantly agreed to allow Dr. Allen to perform another surgery on his right eye which Dr. Allen assured Mr. Martin would correct the problem.

25. On 6/12/2020, Dr. Allen performed a YAG Laser Capsulotomy on Mr. Martin's right eye.

26. Again, Mr. Martin's vision did not improve, but worsened. Instead of clearing his vision, Mr. Martin's vision remained blurry; he also began to see "floaters" post-surgery.

27. Mr. Martin's vision is still poor in his right eye. Prior to any surgery performed by Dr. Allen, Mr. Martin had little to no visual difficulty.

28. Although, Mr. Martin was upset about the outcomes of the surgeries, he was lied to by Dr. Allen and told that his visual disturbances were age-related. Mr. Martin trusted and believed Dr. Allen, because he was a doctor.

29. On 6/28/2022, after hearing Dr. Allen had done the same unnecessary procedures on other patients, Mr. Martin concluded Dr. Allen's surgeries on him were unnecessary.

## DR. ALLEN

30. From on or about March 2018 to the present date, Defendant, Dr. Allen has been performing unnecessary laser eye surgeries on his patients for profit.

31. Dr. Allen has falsely claimed that the majority of his patients are glaucoma suspects to justify his false claims to perform Laser Peripheral Iridotomy ("LPI") and Selective Laser Trabeculoplasty ("SLT") surgeries on his patients.

32. Dr. Allen has performed unnecessary Cataract surgery on patients with no visual impairments.

33. Dr. Allen performs an average of 18 – 25 LPI and SLT surgeries on his patients per week.

34. Dr Allen is performing more LPI's and SLT surgeries in one week than other physicians will perform over several months.

35. On 2/18/22, Dr. Allen had 6 SLT's and 12 LPI's, 18 total glaucoma surgeries scheduled in ONE day. These 18 surgeries were scheduled at 10-minute intervals.

36. Statistically, for Dr. Allen to perform 18 – 25 surgeries per week, he would need to be seeing more than 1000 patients per week.

37. Ophthalmologists who specialize in Glaucoma and have their patients previously screened by optometrist see an average of 100 patients per week. Ninety percent (90%) of the patients are true glaucoma patients. These specialists will perform on average only 1-3 LPI's per week.

38. Dr. Allen is a primary ophthalmologist- he does not have pre-screened glaucoma specialty. On average, he will see 120 – 150 patients per week.

39. Dr. Allen is an Ophthalmologist who works for St. Elizabeth Physicians and performs the laser eye surgeries at St. Elizabeth Medical Center.

40. LPI is a treatment for Narrow Angle Glaucoma (NAG), Narrow Angle Closure, or Narrow Angle Closure Suspect. SLT is a treatment for Open Angle Glaucoma (OAG) or

patients with Ocular Hypertension. Cataract Surgery is a treatment for patients with Severe Cataracts causing visual blurriness and visual glare from lights.

41. Dr. Allen has more patients diagnosed with NAG and OAG than any of the other physicians. He is falsely over diagnosing his patients to falsely bill for unnecessary laser eye surgeries.

42. Dr Allen performs the pre-screening testing for glaucoma surgery on most of his patients before he completes his initial assessment and evaluation of risk factors.

43. Narrow Angle Glaucoma is uncommon, and typically affects less than 1% of the population worldwide. Inuit Eskimos of Greenland and Chinese (& other Asian ethnicities) have the highest incidence of NAG glaucoma.

44. In 2020: the population in Kentucky
    a. 86.95% are white or Caucasian
    b. 8.7% Black or African American
    c. 2.25% (2 or more races)
    d. 1.4% Asian

45. In the Greater Cincinnati area, Ophthalmologist will typically only see 1 out of 100 patients diagnosed with glaucoma. NAG diagnoses normally only occur for 1 out of 300 patients in this area.

46. Statistically this shows Dr. Allen's diagnosis of NAG requiring surgery are impossible for the population in Northern Kentucky.

47. Dr Allen is NOT properly following the Preferred Practice Patterns for Glaucoma management for Ophthalmology by the way he is testing and diagnosing patients.

48. In order to justify an LPI, an Ophthalmologist must perform a gonioscopy exam to evaluate the anterior angle's chamber for risk of occlusion. This is a completely subjective test. Dr. Allen is falsifying test results for gonioscopy for his patients- resulting in a much higher incidence of NAG or NAG Suspects in his patients.

49. In order to justify an SLT, an Ophthalmologist must determine that a patient has a history showing a significant risk of glaucoma and the patient must have an eye pressure greater than 21mm Hg on at least two separate pressure measurements. This is both objective and subjective testing. Dr. Allen is manipulating the numbers and severity of risk to justify surgeries.

50. Dr. Allen is pressuring patients into premature surgery by misrepresenting the severity of their condition. (Threatening permanent blindness if they do not get the surgery "now"). He is convincing patients to have unnecessary surgery for his own profit.

51. On or about August 27, 2021 one of Dr. Allen's patients wrote a survey saying, that Dr. Allen "seemed focused on getting me to agree to surgery".

52. LPI's surgeries should be an uncommon occurrence, because they treat Narrow Angle Glaucoma- an eye disease that affects <1% of the population. However, this is a more profitable surgery for an ophthalmologist to perform because it produces a higher reimbursement and typically only takes 5 minutes per eye to perform.

53. Dr. Allen performs more LPI's than any other surgery.

## PLAINTIFF STANLEY MARTIN

54. Plaintiff underwent unnecessary surgeries as recommended by Dr. Allen.

55. Plaintiff was charged for the unnecessary surgeries.

56. SEP was aware of the unnecessary surgeries and took no action to halt Dr. Allen's unethical practices.

57. SEH was aware of the unnecessary surgeries and took no action to halt Dr. Allen's unethical practices.

58. SEP billed plaintiff for the surgeries.

59. SEH billed plaintiff for this surgeries.

## CRIMES COMMITTED BY DR ALLEN, SEP AND SEH

60. Dr. Zegary Allen, SEP and SEH have committed the following criminal offenses: healthcare fraud (18 U.S.C. 1347), false statements relating to healthcare matters (18 U.S.C. 1035), insurance fraud (KRS 3047.40-020), false swearing (KRS 523.040), theft by deception (KRS 514.040), theft of services (KRS 514.060), wire fraud (18USC1343) and mail fraud (18USC1341).  The officers and board members have violated KRS 502.050.

## CIVIL AND CRIMINAL CONSPIRACY

61. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

62. Defendants acted in concert and conspired in this medical and billing fraud.

63. As a result, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

64. Defendants' wrongful acts have caused injury to Plaintiff. Plaintiff has suffered monetary damages as a direct result of Defendants' unlawful actions against him.

65. Plaintiff suffered these injuries as the result of Defendants' actions and in all reasonable probability will continue to suffer these injuries in the future. Plaintiff also seeks punitive damages as the result of Defendants' intentional fraud.

### CIVIL LIABILITY FOR CRIMINAL CONDUCT KY "PENALTY NO BAR TO CIVIL RECOVERY" (KY. REV. STAT. ANN. § 446.070

66. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

67. Plaintiff has been injured by the violation of all the preceding and/or following statutes.

68. Consequently, Plaintiff is entitled to such damages that have been sustained by reason of the violation per (statute).

69. As a result, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

70. Defendants' wrongful acts have caused damages to Plaintiff.

71. Plaintiff suffered these damages as the result of Defendants' actions. Plaintiff also seeks punitive damages as the result of Defendant Hospitals' fraudulent conduct.

72. Plaintiff is also entitled to recover treble damages as a result of Defendant Hospitals' concerted actions.

### BREACH OF FIDUCIARY DUTY AND NEGLIGENCE

73. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

74. Based upon all facts pled and to be proven, Defendants have a fiduciary duty by their position to protect Plaintiff and were in positions of responsibility and trust.

75. As a result, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

76. Defendants' wrongful acts have caused damages to Plaintiff.

77. Plaintiff suffered these injuries as the result of Defendants' actions. Plaintiff also seeks punitive damages as the result of Defendant and Hospitals' fraudulent conduct.

78. Plaintiff is also entitled to recover treble damages as a result of Defendants and Hospitals' concerted actions.

## KENTUCKY CONSUMER PROTECTION ACT

79. Plaintiff realleges and incorporates by reference the allegations contained in the preceding numbered paragraphs of the Complaint, the same as if repeated verbatim.

80. Dr. Allen, SEP and St. Elizabeth's services rendered to Plaintiff constitutes a "consumer transaction" as defined in KRS 367.110(2) and KRS 367.170(1).

81. Dr. Allen, SEP and St. Elizabeth's omitted suppressed and concealed from Plaintiff facts with the intent that Plaintiff rely on these omissions, suppressions and concealments as set forth herein.

82. Dr. Allen. SEP and St. Elizabeth's misrepresentations, and its omissions, suppressions, and concealments of fact, as described above, constituted unfair, deceptive, and unconscionable acts and practices in violation of KRS 367.110(2), KRS 367.170(1), and KRS 367.170(2) and to substantive rules and case law.

83. Dr. Allen, SEP and St. Elizabeth were fully aware of their acts, actions, and omissions.

84. Dr. Allen, SEP and St. Elizabeth were fully aware that Plaintiff was induced by and relied upon these omissions, suppressions and concealments at the time they were made.

85. Had Plaintiff been aware that Dr. Allen, SEP and St. Elizabeth's representations set forth above were untrue, Plaintiff would not have used their services and the services of Defendants.

86. Dr. Allen, SEP and St. Elizabeth knowingly committed the unfair, deceptive and/or unconscionable acts and practices described above.

87. Dr. Allen, SEP and St. Elizabeth's actions were not the result of any bona fide errors.

88. As a result of Dr. Allen, SEP and St. Elizabeth's unfair, deceptive, and unconscionable acts and practices, Plaintiff has suffered and continues to suffer damages, which include, but are not limited to the following:

   A. Loss of money paid

   B. Severe aggravation and inconveniences

   C. Under KRS 367.170 and KRS 367.220 Plaintiff is entitled to:

   D. Actual damages.

   E. The Court may provide such equitable relief as it deems necessary or proper.

   F. Reasonable attorney's fees and costs incurred.

   G. Punitive Damages.

## FRAUD

89. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

90. Throughout Dr. Allen, SEP and St. Elizabeth's care and treatment of Plaintiff, Defendants made material, false representations to Plaintiff.

91. These misrepresentations and/or concealments were material to Plaintiff because they directly induced the Plaintiff.

92. Defendants knew or should have known such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth that knowledge of their falsity may be inferred.

93. The misrepresentations and/or concealments were made during Plaintiff's visits to see Dr. Allen, SEP and St. Elizabeth, during their stay at St. Elizabeth, during their visits and shortly after each visit or stay when medical records and invoices were prepared.

94. Plaintiff was justified in his reliance on the misrepresentations because a patient has a right to trust their health care practitioners and that the facility is overseeing the doctor to ensure the patients of that doctor can trust the facility.

95. As a direct and proximate result of the aforementioned fraud, Plaintiff suffered damages.

## CLASS ACTION

96. All elements of Civil Rule 23 apply:

    i. The proposed class is all patients of Dr. Allen, SEP and St. Elizabeth who were unlawfully treated and billed in the same manner as Stanley Martin (a) so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class. Ky. R. Civ. P. 23.01. This class is believed to be in the tens of thousands. The Plaintiff can represent the class.

    ii. The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or,

    iii. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members

        not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

    iv. the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

    v. the court should find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

        a. the interest of members of the class in individually controlling the prosecution or defense of separate actions.

        b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

        c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

        d. the difficulties likely to be encountered in the management of a class action.

**WHEREFORE**, Plaintiff respectfully requests that the court:

1. Certifying this as class action;

2. Judgment in favor of Plaintiff and an award to Plaintiff of compensatory, all actual, exemplary, special, and statutory, treble and consequential, damages, including interest, in an amount to be proven at trial;

3. An award of their reasonable and necessary attorneys' fees and costs incurred in prosecuting this action; and

4. All other review to which they are entitled, including a jury trial.

Respectfully submitted,

/s/ A. Dominick Romeo
Dominick Romeo (97754)
Deters Law
5247 Madison Pike
Independence, KY  41051
Phone:  859-363-1900
Fax:  859-363-1444

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d) and other applicable law, I certify that on September 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record and parties who are deemed to have consented to electronic service.

/s/ A. Dominick Romeo
Dominick Romeo (97754)